UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RI INC. D/B/A SEATING SOLUTIONS,<br><br>                    Plaintiff,<br><br>vs.<br><br>CONTINENTAL CASUALTY COMPANY,<br><br>                    Defendant. | Index No. _____<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff RI Inc. d/b/a Seating Solutions ("Seating Solutions"), as its complaint against Continental Casualty Company ("CNA"), alleges as follows:

### PRELIMINARY STATEMENT

1.      This action for damages arises out of the failure and refusal of CNA to honor its obligations under a commercial insurance policy that CNA sold to Seating Solutions. Seating Solutions seeks a declaration that CNA is liable for losses, including property damage and the loss of business income, suffered by Seating Solutions as a result of the catastrophic failure of Seating Solution's computer systems.

2.      By this action, Seating Solutions also seeks damages arising out of CNA's failure to honor its insurance coverage obligations in a fair or prompt manner, including: CNA's negligent reliance upon an adjuster that CNA knew or had reason to know was incompetent, a pattern that is consistent with CNA's handling of similar claims with the same adjuster; CNA's negligent reliance upon the statements of third-parties that were potentially responsible for the underlying loss; and CNA's failure to give equal weight to evidence of coverage in favor of speculation that portions of the claim were not covered.

## PARTIES

3. Plaintiff Seating Solutions is incorporated in New York and has its principal place of business in Commack, New York.

4. Defendant CNA is a corporation organized and existing under the laws of the state of Illinois, and its principal place of business is in Chicago, Illinois.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because Seating Solutions is incorporated in New York and has its principal place of business in Commack, New York, CNA is incorporated in Illinois and has its principal place of business in Chicago, Illinois, and the matter in controversy exceeds the sum or value of $75,000.

6. Venue is proper in the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims herein asserted occurred in this District, a substantial part of property that is the subject of the action is situated in this District, and CNA conducts business in the District.

7. Personal jurisdiction is proper in New York because, at all times material hereto, CNA operated, conducted, engaged in, or carried on a business or business venture in this state, there is the requisite nexus between the business and this action, and because CNA engages in substantial and not isolated activity within New York.

## BACKGROUND

### *Seating Solutions*

8. Seating Solutions specializes in the sales, rental and timely installation of custom designed spectator and sports seating for both commercial and retail use.

9. All aspects of Seating Solutions' business rely upon the proper functioning of its computer systems and websites including web direct ordering, day-to-day order processing, quotes, collections, as well as marketing contacts and client history.

### *Seating Solutions' Computer Systems Collapse*

10. On or about August 21, 2012, Seating Solutions' computer system suffered a catastrophic failure.

11. The problems with Seating Solutions' computer systems collapse reverberated throughout the company's business. The websites did not function properly and customer data was lost.

12. Seating Solutions ultimately lost business as a result of these problems.

13. Seating Solutions' total loss exceeds $2,200,000 and includes more than $320,000 paid to vendors to replace equipment and restore the systems, $180,000 in costs relating to the purchase of new servers, and over $1,700,000 in lost sales during the period of direct disruption of operations, and in the ensuing months as a result of the company's greatly diminished ability to get new business into the pipeline.

### *The Policy*

14. CNA sold a commercial property insurance policy to Seating Solutions, policy number 5084459332 (the "Policy") with a policy period of March 26, 2012 to March 26, 2013, to protect against the risk of loss or damage to Seating Solutions' property.[1] A true copy of the Policy is attached hereto as Exhibit A and has been bates numbered SEA000001-158 for ease of reference.

---

[1] "RI INC, DBA: SEATING SOLUTIONS" is listed as an Additional Named Insured pursuant to the attendant schedule. Exhibit A at SEA000010.

15. The Building at 60 Austin Boulevard, Commack, NY 11725 is listed on the Schedule of Locations and Coverages. *See* Exhibit A at SEA000009.

16. The Policy provides coverage for "all risks of direct physical loss or damage to Covered Property...." *See* Exhibit A at SEA000040.

17. Covered Property includes the Building as well as Business Personal Property. *See* Exhibit A at SEA000040.

18. Business Personal Property includes "[e]lectronic data processing equipment" including data processing devices. *See* Exhibit A at SEA000041.

19. Covered Causes of Loss also include Equipment Breakdown (which includes electronic data processing equipment). *See* Exhibit A at SEA000063.

### *Restoration of Electronic Data*

20. The Policy obligates CNA to cover Seating Solutions' "costs to replace or restore lost or damaged 'electronic data' for which duplicates do not exist." *See* Exhibit A at SEA000047.

21. CNA is also required to pay the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records. *See* Exhibit A at SEA000047.

22. Seating Solutions purchased coverage for the restoration of electronic data because its business operations rely on being able to restore lost or damaged electronic data, such as customer account data.

### *Business Income Coverage*

23. The Policy also provides Business Income Coverage. *See* Exhibit A at SEA000026.

24. Under the Business Income Coverage, CNA agreed to cover:

> [t]he actual loss of Business Income [sustained by Seating Solutions] due to the necessary 'suspension' of [Seating Solution's] operations during the period of restoration. The 'suspension' must be caused by direct physical loss or damage to property at premises that are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

Exhibit A at SEA000026.

25. "Business Income" means Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred and continuing normal operating expenses incurred, including payroll. See Exhibit A at SEA000026.

26. "Electronic Data" means, in pertinent part, "information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software.....data processing devices or any other repositories which are used with electronically controlled equipment." See Exhibit A at SEA000035; SEA000060.

27. "Operations" means, in pertinent part, Seating Solutions' "business activities occurring at the described premises." See Exhibit A at SEA000035; SEA000061.

28. The "Period of Interruption" means the period of time that:

    a. Begins with the date of direct physical loss or damage to the property caused by or resulting from any Covered Cause of Loss; and

    b. Ends on the earlier of:

        (1) The date when the property should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

        (2) The date when business is resumed at a new permanent location.

*See* Exhibit A at SEA000035; SEA000061.

29. "Suspension" means, in pertinent part, "[t]he slowdown or cessation of [Seating Solutions'] business activities." *See* Exhibit A at SEA000036; SEA000062.

30. There is a limitation on coverage for Business Income where the "suspension" of "operations" is caused by any loss or damage to "electronic data" except as provided under the provision entitled "Additional Coverage – Restoration of Electronic Data." *See* Exhibit A at SEA000027.

### *Extra Expense Coverage*

31. The Policy also provides Extra Expense Coverage. *See* Exhibit A at SEA000026.

32. Extra Expense means "necessary expenses [Seating Solutions] incur[s] during the 'period of restoration' that [it] would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." *See* Exhibit A at SEA000026.

33. CNA will pay Extra Expense (other than expense to repair or replace property) to: "(1) Avoid or minimize the 'suspension' of business and to continue 'operations' at the described premises…..(2) minimize the 'suspension' of business if [Seating Solutions] cannot continue 'operations.'" *See* Exhibit A at SEA000026.

34. There is a limitation on coverage for Extra Expenses where action is taken to avoid or minimize a "suspension" of "operations" caused by any loss or damage to "electronic data" except as provided under the Additional Coverage – Restoration of Electronic Data or under the Restoration of Electronic Data Coverage Extension in the Building and Personal Property Coverage Form. *See* Exhibit A at SEA000027.

### *Coverage for Restoration of Electronic Data*

35. The Policy extends the Business Income coverage to apply to a "suspension" of "operations" caused by loss or damage to "electronic data," requiring the replacement or restoration of the "Electronic Data" as provided under the Restoration of Electronic Data Coverage in the Building and Personal Property Coverage Form. *See* Exhibit A at SEA000028.

### *Electronic Data Processing Systems Coverage Form*

36. The Policy also contains Electronic Data Processing Systems Coverage. *See* Exhibit A at SEA000111.

37. The Coverage obligates CNA to "pay for direct physical 'Loss' to Covered Property at the locations described in the Declarations caused by or resulting from any of the Covered Causes of Loss." *See* Exhibit A at SEA000111.

38. "Covered Property" includes hardware, software, communication systems, and protection and control systems. *See* Exhibit A at SEA000111.

39. "Covered Causes of Loss" means risks of direct physical loss except those causes listed in the Exclusions. *See* Exhibit A at SEA000111.

40. The Coverage extends "Loss" to Covered Property, Extra Expense, and "Loss" of Business Income coverage to "Loss" caused by or resulting from "Electrical Disturbance" or "Communication or Power Supply Disturbance." *See* Exhibit A at SEA000111.

41. "Communication or Power Supply Disturbance" means "interruption or change in the electrical power supply or communication services (including telephone or microwave services), power surge, blackout or brownout. *See* Exhibit A at SEA000117.

-7-

nydocs1-1027700.4

42. "Electrical Disturbance" means electrical injury, magnetic injury, disturbance of electronic records or erasure of electronic records. *See* Exhibit A at SEA0000117.

43. "Loss" means accidental loss or damage. *See* Exhibit A at SEA000118.

44. The Coverage also covers "Extra Expense" and the cost of preparing a statement of "Loss." *See* Exhibit A at SEA000113-14.

45. With respect to the Electronic Data Processing Coverage Form, "Period of Restoration" means the period of time that, "Begins with the date of direct physical 'Loss' caused by or resulting from any Covered Cause of Loss; and Ends on the date when the property should be repaired, rebuilt or replaced with reasonable speed and similar quality." *See* Exhibit A at SEA000118.

### *Continental's Dilatory and Negligent Investigation of the Claim*

46. Seating Solutions promptly contacted CNA regarding the breakdown of its systems.

47. CNA instructed Seating Solutions to disconnect the damaged equipment, store it for future review at CNA's option, and to submit a claim.

48. Upon information and belief, LWG Consulting ("LWG"), a corporation which refers to itself as "Post-Disaster Technical Experts" and operates under the motto of "Certainty in an Uncertain World," was retained by CNA to act on its behalf with respect to Seating Solutions' claim.

49. LWG contacted Seating Solutions and informed the company that LWG, on CNA's behalf, handles claims for computer systems failure by either: (1) visiting the site, removing the damaged equipment, examining it, and interviewing the staff and

reviewing the environment and equipment to determine what happened or (2) interviewing staff to determine what happened.

50. Seating Solutions requested that LWG undertake a full investigation, the first approach outlined above.

51. LWG subsequently informed Seating Solutions that it would only conduct interviews and that it would not visit the site or inspect the damaged equipment. However, LWG continued to advise Seating Solutions that the damaged equipment was to be disconnected, held, and not used or taken by anyone in case CNA decided that they wanted to inspect the equipment.

52. When Seating Solutions pressed LWG and asked that it evaluate the damaged equipment and conduct an independent investigation, CNA's agent, LWG, told Seating Solutions that CNA had decided not to spend the money to do so at this time.

53. Seating Solutions, which needed to purchase replacement hardware, software and other related computer equipment and services in order to restore its business operations as soon as possible, continued to urge CNA to conduct an independent investigation. Despite this, CNA refused to do so.

54. Nonetheless, LWG continued to advise Seating Solutions to disconnect the damaged servers, not to allow anyone to use or remove them from the site as CNA may want to examine them in the future. In complying with this instruction, Seating Solutions was precluding from using its existing hardware.

55. On March 7, 2013, nearly seven months after the incident, LWG finally examined the damaged equipment at Seating Solutions.

56. Upon LWG's arrival at Seating Solutions, LWG reconnected and powered the servers and determined that the servers were able to run and that the data was in the servers but could not determine whether data was usable or recoverable. LWG then instructed Seating Solutions to send the servers to a data recovery company.

57. Seating Solutions complied with LWG's requests and, in less than ten days from the time it was sent to the data recovery company, the data recovery company reported that the data was recovered.

58. At this point, however, Seating Solutions had already rebuilt the computer systems, which included a software update, and so the recovered data was not compatible with the current software.

59. In addition, because the functioning of the business required a working computer system and CNA had asked Seating Solutions to disconnect and not use its servers, Seating Solutions incurred significant costs in purchasing new servers and software to run its business.

60. Thus, had LWG promptly examined the equipment as Seating Solutions requested, Seating Solution's loss would have been minimal. Indeed, CNA's negligent inspection and adjustment greatly increased the monetary loss resulting from the incident.

61. As a consequence of CNA's negligence, Seating Solutions' employees devoted substantial periods of what turned out to be unnecessary time to the recovery effort, time for which the employees were paid.

62. Moreover, upon information and belief, CNA has engaged in a pattern of such negligent claims handling, using the same adjuster, which CNA knew or had

reason to know was incompetent and distracted by personal issues at all time periods relevant to this dispute, in other situations involving similar claims.

### *CNA Fails to Honor its Obligations under the Policy*

63. As a result of the computer-related losses incurred by Seating Solutions, Seating Solutions sought coverage under the Policy and provided CNA with timely notice of its losses (the "Claim").

64. Seating Solutions' losses are in excess of any applicable deductible.

65. Seating Solutions has complied with all of the terms of the Policy.

66. CNA professed to agree to make a partial payment in the amount of $150,263.96 (before application of the $1,000 deductible), and following a detailed letter from the undersigned regarding CNA's claims handling, CNA discovered that it had excluded $17,945.10 due to a mathematical error and that there was an additional payment owing, for extra expense, in the amount of $10,000. Despite its promise to pay, however, CNA has made five payments, since February 2013, totaling $149,203.76.

67. Although CNA has made partial payment, this payment is but a fraction of what it is obligated to pay under the Policy, and does little to assist a policyholder that expended significant time and resources as a result of CNA's improper and negligent claim handling. Moreover, the payment fails to cover even the cost of the new servers that Seating Solutions purchased to keep its business running during the time period in which CNA told Seating Solutions to disconnect and hold the existing servers.

## CAUSE OF ACTION
### (Breach Of Contract)

68. Seating Solutions repeats and realleges the allegations set forth in paragraphs 1 through 67 as though fully set forth herein.

69. The Policy constitutes a valid contract of insurance coverage between Seating Solutions and CNA, and its terms and conditions have been triggered to provide coverage to Seating Solutions.

70. Seating Solutions has complied with all conditions and satisfied all obligations to the extent that they have not been waived or abrogated by Continental's conduct, omissions or actions.

71. All insurance premiums due under the Policy have been paid, and thus, Seating Solutions is rightfully entitled to the coverage benefits of the Policy.

72. Under the Policy, CNA is obligated to pay for the losses sustained by Seating Solutions.

73. CNA has breached its obligations under the Policy:

    (a) In failing to honor the nature and purpose of the Policy;

    (b) By virtue of its improper handling of the Claim;

    (c) Through its improper and untimely investigation of the Claim;

    (d) Failing to consider evidence of coverage, and;

    (e) Due to its delay in paying the Claim.

74. CNA has breached the covenant of good faith and fair dealing implied in every contract.

75. CNA's improper and delayed claims investigation is a breach of CNA's duty to act in good faith.

76. The consequential damages resulting from CNA's breach of the duty to act in good faith were within the contemplation of the parties as the probable result of a breach at the time prior to contracting.

77. As a result of CNA's breach of its obligations under the Policy, Seating Solutions has been damaged in an amount to be determined at trial.

78. As a result of its breach, CNA is liable to Seating Solutions for damages for all losses incurred to date by Seating Solutions or which may be incurred up to the applicable sublimits under the Policy, together with costs and disbursements of this action, including, but not limited to, reasonable attorneys' fees, costs and pre-judgment and post-judgment interest.

WHEREFORE, Seating Solutions prays for judgment as follows:

1. On the Cause of Action, a determination by this Court in favor of Plaintiff:

    (a) awarding money damages, including but not limited to, consequential damages, in an amount to be determined at trial, pre-judgment and post-judgment interest, and attorneys' fees; and

    (b) requiring CNA to pay the full amount of the Claim.

2. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Seating Solutions demands trial by jury on all issues so triable.

Dated: April 22, 2014

                                          By:   /s/ Finley T. Harckham
                                                   Finley T. Harckham
                                                   Peter A. Halprin
                                                   Vivian C. Michael
                                                   ANDERSON KILL, P.C.
                                                   1251 Avenue of the Americas
                                                   New York, NY 10020
                                                   Telephone: 212-278-1000

                                                   *Attorneys for Plaintiff*